# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF OHIO

## WESTERN DIVISION

| | | |
|---|---|---|
| ROBBINS, et al., | ) | CIVIL ACTION NO. C-1-00 706 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Judge Weber |
| | ) | |
| MATTEL, INC., | ) | Magistrate Judge Hogan |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPLY OF DEFENDANT MATTEL, INC. IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' CLAIM FOR ACCOUNTING OF PROFITS

07187/533004.2

## Introduction

Plaintiffs' Opposition makes clear that they are claiming an accounting for profits against Mattel based solely upon the <u>system of play</u> of the UNO game -- which is not protected by copyright -- and not upon Mattel's use of any copyright-protected expression allegedly contained in the 1971 Instructions. Their Opposition abandons the list of short, common phrases that they first asserted at the deposition of their expert witness, Joli Quentin Kansil (and indeed avoids any reliance on his testimony at all), and relies exclusively on the chart of claimed similarities that Plaintiff John T. Robbins purportedly generated. Yet, that chart, as Plaintiffs have conceded, merely recites the basic features of the <u>system</u> of playing the UNO game. It does not describe a single item of protectible expression. This Court previously rejected Plaintiffs' attempts to claim copyright in matters besides the expression contained in written instructions, yet Plaintiffs simply rehash their losing arguments again here.

To make their claim to the unprotected play system of the UNO game, Plaintiffs build an argument on several faulty premises. First, they argue that notwithstanding the holding of *Kohus v. Mariol*, the trier of fact in this case will have to compare the unprotected elements of the game for similarity -- i.e., the precise elements that *Kohus* instructs must be filtered <u>out</u> of the similarity comparison -- to ascertain whether the 1999 UNO game instructions have the same "total concept and feel" as the 1971 Instructions. But Plaintiffs' argument is squarely contrary to the holding of *Kohus*: *Kohus* clearly states that the Court must first filter out unprotected material before comparison is performed. Because the issue of "total concept and feel" is addressed only on the <u>second</u> step of the substantial similarity inquiry, not the first "filtering" step at issue here, Plaintiffs' contention is simply irrelevant to this Motion.

Second, Plaintiffs argue that even if the allegedly similar elements in each set of instructions are not protected by copyright, a defendant's use of a "selection" and "combination" of unprotectible elements nonetheless is actionable copying. This theoretical discussion has

nothing to do with the case before this Court.  Plaintiffs overlook that the combination <u>itself</u> must be protectible for a defendant's alleged use of it to be actionable.  Here, the "combination" asserted by Plaintiffs is simply the unprotectible system of play of the UNO game.  That Mattel's current game instructions supposedly utilize the same "combination" of "elements" simply means that they continue to describe the same underlying, uncopyrightable  "system" of game rules.  Moreover, Plaintiffs' own expert testified that this "combination" of elements -- the format and structure of the 1971 Instructions -- is not original at all, but is a "stock" format for game instructions that has been in use for decades and necessarily flows from the enterprise of drafting game instructions.  Mattel accordingly has submitted <u>evidence</u> that both the individual elements <u>and</u> the combination of elements that Plaintiffs claim Mattel has used are not protected by copyright, and, under *Kohus*, neither can support their claim for accounting.

Third, Plaintiffs assert that the "originality" of the UNO game itself gives Plaintiffs the right to recover if Mattel's current UNO game instructions describe any of the same "rules" or functions of that "original" game.  Plaintiffs arrive at this conclusion, which is entirely contrary to this Court's summary judgment ruling and section 102(b) of the Copyright Act (which Plaintiffs' Opposition does not even cite) through their misapplication of the so-called "abstractions" test.  Purporting to apply this test, Plaintiffs "abstract" the following elements out of the 1971 Instructions: (1) the UNO cards are organized into four suits distinguished by different colors; (2) the game uses cards numbered 0 through 9; and (3) it utilizes cards called "Wild," "Skip," "Reverse," "Draw 2," and "Wild - Draw 4."  If ever there has been a recitation of an unprotectible <u>system</u> or "listing of ingredients," this is it.  Over a century of fundamental and well-established copyright law makes clear that such clearly functional aspects of an uncopyrightable system do not magically acquire copyright protection by virtue of being written down or "described."  Even if Merlin and Raymond Robbins "invented" a new "game" in UNO (as Plaintiffs themselves put it), as a matter of law they did not obtain <u>copyright protection</u> for the game, the "rules," or the method or system by which the game is played.  Such matters are

protectible only by a patent, which Plaintiffs do not have.  Summary judgment accordingly is appropriate on Plaintiffs' claim of right to the cards, system of scoring, and colors utilized in playing the game UNO.

Fourth, Plaintiffs try to portray Mattel's motion as raising a dispute over the copyrightability of the 1971 Instructions as a whole, rather than whether the <u>elements</u> that they have rased are protectible by copyright.  Mattel has not contended on this Motion that the '531 Copyright is invalid.  Instead, this Motion is concerned with the first step of *Kohus'* standard for copyright substantial similarity, which mandates filtering out <u>unprotected elements</u> and which is a separate, independent legal issue from the work's overall copyrightability.  Plaintiffs have failed to show any <u>elements</u> of the 1971 Instructions that are allegedly substantially similar to the 1999 Mattel instructions are protected by copyright.

In a similar vein, Plaintiffs' Opposition raises a host of irrelevant arguments over the application of the doctrines of merger and *scenes a faire* to the instructions as a whole.  *Kohus* itself makes clear, however, that these doctrines are indeed relevant to the endeavor of identifying unprotected matter.  Where alleged expression merely flows naturally from a work's theme, or cannot be separated from the idea it purports to express, *Kohus* holds that it must be filtered out.  That these doctrines may have other applications (such as to require a higher standard of "verbatim" or "slavish" copying on the second substantial similarity step) is irrelevant to this Motion.  The *Kohus* inquiry is concerned purely with the first step of <u>identifying</u> and <u>filtering</u> out elements of the 1971 Instructions that are not protected by copyright.  Thus, Plaintiffs' quarrel with the application of the doctrines in other contexts is irrelevant here.

In sum, because Plaintiffs cannot prove that any element of the 1971 Instructions purportedly used by Mattel is protected by copyright in the first instance, summary judgment on Count II of Plaintiffs' complaint is warranted.

**Argument**

I.    PLAINTIFFS' MOTION IGNORES THE CENTRAL HOLDING OF *KOHUS* AND MISSTATES THE TWO-STEP SUBSTANTIAL SIMILARITY TEST

Plaintiffs' Opposition seeks to evade the filtration requirement adopted in *Kohus v. Mariol* by arguing that the "total look at feel" of the subject works must be compared. Plaintiffs' characterization of the *Kohus* substantial similarity test is legally erroneous.

The substantial similarity test adopted by the Sixth Circuit in *Kohus* is comprised of two steps. The first step, which this Motion addresses, requires filtering out claimed elements of similarity that are not protected by copyright. This step involves objective analysis and dissection, and is an appropriate area for expert testimony. 328 F.3d at 855-56.[1] For this reason, the first step is the appropriate step at which to grant summary judgment. *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994); *Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 608 (1st Cir. 1988) ("By dissecting the accused work and identifying those features which are protected in the copyrighted work, the court may be able to determine as a matter of law whether or not the former has copied protected aspects of the latter.").

The second step, which is not relevant to this Motion, involves the impressions of the "ordinary observer," and asks "whether the allegedly infringing work is substantially similar to the protectible elements of the original." 328 F.3d at 856 (emphasis added).[2] Where, as here, a Plaintiff cannot identify any protectible element that has been purportedly copied, then summary judgment is appropriate at the first step of the substantial similarity analysis.

For this reason, Plaintiffs' invocation of "total concept and feel" is irrelevant to this motion. If, as Plaintiffs contend, the Court were required to perform a "total concept and feel"

---

[1]  As *Kohus* noted, some circuits refer to this first step as the "extrinsic" step. 328 F.3d at 854 (citing *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1163-64 (9th Cir. 1977)).

[2]  Some courts refer to this as the "intrinsic" test. 328 F.3d at 854, citing *Krofft*.

comparison notwithstanding the outcome of the first step, then "there would be no point to the extrinsic test [i.e., filtration], or to distinguishing ideas from expression." *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994). Indeed, such a result would be contrary to the holdings of *Kohus*, section 102(b), and the Copyright Clause of the Constitution,[3] and for this reason Courts are firm that "the unprotectible elements have to be identified, or filtered, **before** the works can be considered as a whole." *Apple Computer*, 35 F.3d at 1446 (emphasis added).[4]

Plaintiffs rely on two Second Circuit cases, *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996 (2d Cir. 1995), and *Boisson v. Banian, Ltd.*, 273 F.3d 262 (2d Cir. 2001), to support their contention that all of the unprotected elements of the 1971 instructions must be included in a subjective "total concept and feel" inquiry that obviates any dissection or filtering. These cases, which address the analysis at the second step of the "substantial similarity" test, are irrelevant here. *E.g., Knitwaves*, 71 F.3d at 1004 (discussing the "more discerning observer" standard);

---

[3] "To promote the progress of science and useful arts, by securing for limited time to authors and inventors the exclusive right to their respective writings and discoveries." U.S. Const., art. I, § 8 cl. 8 (emphasis added).

[4] Numerous appellate decisions uphold grants of summary judgment where plaintiffs could not show that protected expression was copied. *E.g., Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1174 (9th Cir. 2003); *Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC*, 259 F.3d 25, 37 (1st Cir. 2001); *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1215 (11th Cir. 2000); *Attia v. Society of New York Hosp.*, 201 F.3d 50, 57 (2nd Cir. 1999); *Williams v. Crichton*, 84 F.3d 581, 588 (2nd Cir. 1996); *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 443 (9th Cir. 1991). District court decisions granting summary judgment on this ground this year alone include *Cottrill v. Spears*, 2003 WL 21223846, *9 (E.D. Pa. 2003) (no infringement of song where "any similarity between the two songs . . . is due to the use of basic musical elements or musical material that are characteristic to this style or type of music"), and *Gentieu v. Tony Stone Images/Chicago, Inc.*, 255 F.Supp.2d 838, 849 (N.D. Ill. 2003) ("It is of course possible in appropriate cases that the substantial similarity of copyrighted and allegedly infringing works can devolve into a fact-intensive inquiry requiring a trial. But the non-trial alternative of summary judgment is the appropriate route where the court concludes either that any similarity between the works concerns only noncopyrightable elements or that no reasonable jury could find the works substantially similar") (emphasis added).

*Kohus*, 328 F.3d at 854 (the second step is the "ordinary observer" test). As stated above, the second step is irrelevant to this Motion, and will not be implicated in this case if Plaintiffs cannot meet their burden on the first step.

II.    THE "PROTECTIBLE ELEMENTS" OF THE UNO GAME THAT PLAINTIFFS PURPORT TO IDENTIFY ARE, IN FACT, UNPROTECTIBLE ASPECTS OF THE UNO *GAME*, NOT THE 1971 INSTRUCTIONS

Plaintiffs have abandoned their prior contentions that phrases from the 1971 Instructions such as "the next player must draw" are copyright-protected. Instead, they rely completely on the table of alleged similarities from the John Robbins Declaration and raise an additional contention that the 1971 Instructions' "combination" of unprotectible elements is independently protectible.[5] These "elements" -- which Plaintiffs themselves describe as aspects of the UNO "game" rather than "expression" -- are not protectible and must all be filtered out. Indeed, this Court rejected this very argument previously, specifically holding on summary judgment that the game is not protected by the '531 Copyright.

A.    None of the Aspects of the *System of Play* of the UNO Game Constitutes Protectible "Expression"

<u>All</u> of the material identified by Plaintiffs constitutes unprotectible aspects of the system or method of playing the UNO game. None of this material is protected because "ideas," systems" and "processes" -- such as the colors of cards, their names, and the way they are played or scored -- are not protected by copyright. Plaintiffs' assertions to the contrary are no more than a thinly veiled re-argument of the Court's prior summary judgment rulings. Applying well-established law, this Court previously held that the '531 Copyright does not and cannot extend to the UNO "game," game "rules," the "content" of rules or anything other than the specific

---

[5] Oddly, Plaintiffs argue that the Court should not dissect a subject work into simple components such as letters or individual words. Plaintiffs complaint is misplaced, as Mattel's motion is based purely on purported elements that Plaintiffs themselves identified.

expression contained in the 1971 Instructions.[6]  On this basis, as well as Plaintiffs' complete failure to prove entitlement to any other potential rights, this Court ruled:  "Plaintiffs have not come forward with evidence to establish an ownership interest under the Renewal Copyright Registration in any material other than the 1971 UNO instructions.  Accordingly, to the extent plaintiffs claim in Count I an ownership interest in any material other than the 1971 UNO instructions, Mattel is entitled to summary judgment."[7]  Despite this unambiguous decision by the Court, Plaintiffs have persisted in asserting, with no supporting authority, that they own potential rights to a litany of matters other than just the expression of the 1971 Instructions, including the UNO "rules,"[8] the "play features of the game" and "the unique play features on which the Uno® game is based,"[9] the "framework" of UNO games[10] and the UNO "brand."[11]  In granting Mattel partial summary judgment a second time, the Court again rejected plaintiffs' sweeping claims and reiterated its prior holding that plaintiffs have no potential ownership interest in "any material other than the 1971 UNO instructions."[12]  Thus, Plaintiffs' latest attempt to assert protectible rights in the UNO "game," the game "rules," the play features of UNO and the method or system of playing UNO fails for this reason alone.

This conclusion is also compelled by the Copyright Act itself and by over a century of precedent, and is acknowledged by the commentators as an essential aspect of the copyright

---

[6]  Court's March 21, 2002 Order, at pages 5-7.

[7]  *Id.*, Ex. A at page 8.

[8]  Plaintiffs' Opp. to Mattel's Motion for Partial Summary Judgment re: Profits Accounting (Docket No. 80), at 3, 11, 14.

[9]  *Id.*, at 4-5, 6, 9.

[10]  *Id.*, at 6.

[11]  *Id.*, at 17.

[12]  Court's Order of October 18, 2002, at page 6.

system. First, Section 102(b) on its face states that such matters are not protected by Copyright. Although Plaintiffs seek to distinguish between "original" systems and "public domain" systems in order to argue that the method of playing UNO is protected, the Act itself makes no such distinction. All "systems," whether original or not, are outside the scope of copyright protection. Indeed, in *Baker v. Selden*, 101 U.S. 99, 102 (1879)--perhaps the most-cited copyright case of all time, and still "the standard citation" for this proposition[13]--the U.S. Supreme Court made clear over 120 years ago that merely describing an uncopyrightable system does not give a plaintiff any copyright interest in the underlying system, even if the writer "invented" that system.[14]  The concept was summarized aptly in *Lotus Dev. Corp. v. Borland Int'l Inc.*, 49 F.3d 807 (1st Cir. 1995), where the court stated:

> We think that "method of operation," as that term is used in § 102(b), refers to the means by which a person operates something, whether it be a car, a food processor, or a computer.  Thus a text describing how to operate something would not extend copyright protection to the method of operation itself; other people would be free to employ that method and to describe it in their own words.  Similarly, if a new method of operation is used rather than described, other people would still be free to employ or describe that method.

*Id.* at 815.

Many cases apply this fundamental principle to written "manuals" or "instructions" and hold that they do not create rights in the underlying matters described or explained.  For example, in *Affiliated Enters. v. Gruber*, 86 F.2d 958 (1st Cir. 1936), which involved a type of contest, the court stated that:

> As the system has not been copyrighted and, being in no sense a writing, could not be (Constitution, art. 1, Sec. 8, cl. 8; 17 U.S.C. § 4 (17 U.S.C.A. § 4)) and has not been patented, if it could be, we are constrained to hold that, although plaintiff has expended time and money in originating and developing a system, it has no property right therein which has been appropriated by the defendants.

---

[13] *Bucklew v. Hawkins, Ash, Baptie & Co., LLP.*, 329 F.3d 923, 928 (7th Cir. 2003); *see also Kohus*, 328 F.3d at 856 (citing *Baker*).

[14] The Court explained that the novelty or originality of a system is exclusively a matter for the patent laws. *Baker*, 101 U.S. at 103.

*Id.* at 961 (emphasis added). Similarly, in *Seltzer v. Sunbrock*, 22 F.Supp. 621, 630 (S.D. Cal. 1938), a case involving the rules of an athletic event, the court similarly stated, "Even if plaintiffs' books be held to describe a game or sporting event, the rules thereof, as ideas, are not copyrightable." (Emphasis added). In *Griggs v. Perrin*, 49 F. 15 (N.D.N.Y. 1892), the plaintiff complained that his copyright in a book describing his own "new" system for shorthand reporting had been infringed. The court stated: "So with a process, a system or an art, the fact that one person has described it and obtained a copyright for his description does not prevent others from describing the same art in their own language." 49 F. at 15-16. Indeed, the *Griggs* court confirmed that "the system the book illustrates is not the subject of a copyright," "whether the system is an old one or new and original." *Id.* at 15 (emphasis added).

The commentators are equally in agreement. Nimmer discusses games and game instructions in a section entitled "Works of Utility: Limitations on Copyrightability by Reason of Utilitarian Function," and states:

> no copyright may be obtained in the system or manner of playing a game or in engaging in any other sporting or like activity. . . . the wording of instructions for the playing of a game is itself copyrightable so as to prevent a literal or closely paraphrased copying. Such copyright would not, however, permit a monopoly in the method of play itself, as distinguished from the form of instructions for such play.

Nimmer, § 2.18[H][3][a], at pp. 2-204.15 to 2-204.16.

This principle alone is dispositive of this motion. As will be shown in the following sections, Plaintiffs' cited "elements" are, in fact, unprotectible aspects of playing the UNO game. Because all of these elements must be filtered out as unprotectible matter, there is nothing to compare to the Mattel instructions and summary judgment is appropriate.

     B.     The UNO Cards and the Numbering or Coloring System Identified in the "John Robbins" Table Are Not Protected by the '531 Copyright, or by Copyright Law At All

Plaintiffs argue that various aspects of the system of play of the UNO card game, listed in the John Robbins table, are protected by the copyright for the 1971 Instructions. They set forth the following list of purported elements that they claim are copyright protected:

(1)     both sets of instructions "instruct the user" to "use" red, green, blue and yellow cards;

(2)     both sets of instructions "instruct the user" to "use" cards numbered 0-9 for all four colors; and

(3)     both sets of instructions "instruct the user" to "use" cards marked "Skip," "Reverse," "Draw 2," "Wild," and "Wild - Draw Four" designated by the same four colors.

(Opposition, at 13-14.)

Plaintiffs set forth no wording of the 1971 Instructions in their list of claimed similarities. Instead, they simply recite that both the 1971 and 1999 Instructions have the central, similar function of "instructing" players to "use" the various UNO game cards.  Because of course, the "uses" of the game cards are simply the rules of play of the UNO game, Plaintiffs' list of purported elements devolves into a claim, pure and simple, that anyone who instructs a player how to play the UNO game is utilizing the 1971 Instructions.  Confirming the point, they even argue that Mattel's references to the UNO "game" in marketing materials and the use of the word "original" to describe the basic UNO card game are evidence that Mattel is utilizing the 1971 Instructions.  These contentions turn copyright law on its head.

First, Plaintiffs' own expert has made clear that to the extent the various UNO game cards, and their colors and functions, are set forth in the text of the 1971 Instructions, such expression is purely functional, i.e., "the words used . . . in the 1971 instructions about colors and numbers is just to describe the function of those colors and numbers."[15]  Mr. Kansil went through each of the allegedly "special cards" cited by Plaintiffs here and stated, in no uncertain terms, that the references in the 1971 Instructions to each of these cards merely describes each card's function in the game itself:

_____

[15] Kansil Trans., at 149:10-14 (emphasis added).  Portions of the Kansil deposition cited in this brief ("Kansil Trans.") are submitted as Exhibit A to the Affidavit of Steven Vaughan.

07187/533004.2                    -10-

- The use of the word "skip" in the 1971 Instructions "just describes the function of the Skip card" -- "and that function is just to skip over the next player;"[16]

- The use of the word "reverse" in the 1971 Instructions simply describes the function of the reverse card, which is to reverse the direction of play;[17]

- The use of "draw 2" in the 1971 Instructions is simply to describe the function of the "Draw 2" card, which, when played, requires the player to draw two cards;[18]

- The use of the word "wild" in the 1971 Instructions is simply to describe the function of the "Wild" card, which, when played, may represent any card;[19]

- The use of the phrase "wild - draw four" in the 1971 Instructions is simply to describe the function of the "Wild - Draw Four" card, which, when played, may be played as a wild card and requires a player to draw four cards from the deck.[20]

The 1971 Instructions' function of instructing as to these uses is not protectible by copyright. *See Lotus*, 49 F.3d at 815 ("The Lotus menu command hierarchy provides the means by which users control and operate Lotus 1-2-3. If users wish to copy material, for example, they use the 'Copy' command. If users wish to print material, they use the 'Print' command."). It goes equally without saying that the aforementioned words are mere unprotectible "titles" of the cards themselves and "short phrases." 37 C.F.R. § 202.1(a); *Bird v Parsons*, 289 F.3d 865, 881 (6th Cir. 2002).

---

[16] Kansil Trans., at 149:21-150:3.

[17] Kansil Trans., at 150:19-151:6.

[18] Kansil Trans., at 151:17-152:4.

[19] Kansil Trans., at 152:15-153:3.

[20] Kansil Trans., at 153:10-21.

Mr. Kansil further testified that the UNO deck of 112 cards was not even "original"[21] and that, in general, "the composition of the UNO deck is <u>functional</u> in that it allows people to play the game."[22] This testimony disposes of any argument Plaintiffs might make that they can claim copyright in <u>any</u> aspect of the composition of the decks of cards, or the colors or the numbers used in the game, <u>or</u> in the mere fact that they are discussed in the 1971 Instructions. Plaintiffs have raised only functional attributes of the system of play and not any expression protectible by copyright. 17 U.S.C. section 102(b); *Sem-Torq, Inc. v. K Mart Corp.*, 936 F.2d 851, 854-55 (6th Cir. 1991) (functional expression excluded from copyright protection).

Second, even without the dispositive testimony of Plaintiffs' expert witness, this Court has already held that Plaintiffs cannot claim any interest in any material other than the 1971 UNO instructions -- i.e., the "rules," the system of play, or the game. The uses or functions of the UNO game cards themselves, and the fact that the 1971 Instructions "instruct" players as to their functions, simply are <u>not</u> matter protected by the '531 Copyright, "regardless of the form in which [they are] described, explained, illustrated, or embodied in [a] work." 17 U.S.C. § 102(b). Plaintiffs may not, by virtue of having written down this "explanation," secure a copyright in the very <u>function</u> of describing how to play UNO and may not (as they now claim) "prevent others from describing the same [function] in their own language." *Griggs*, 49 F. at 16.

Plaintiffs claim to have arrived at their list of elements by "properly apply[ing] the abstractions test" established by Judge Learned Hand, but their attempt at "application" amounts to a mere listing of the features of the system of play, unaccompanied with any evidence to show that the elements are protected by copyright. (Opposition at 9-14.) Their invocation of the "abstraction" test does nothing to salvage Plaintiffs' claims, but rather is fatal under this Court's prior summary judgment ruling and under elementary copyright law. Unlike in *Atari, Inc. v.*

---

[21]  Kansil Trans., at 182:10-17 ("It [the UNO game] was not unique having 112 cards, that's correct.").

[22]  Kansil Trans., at 184:20-23.

*North Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 617 (7th Cir. 1982) where the Court found an "audio component and the <u>concrete details</u> of the visual presentation" of Pac-Man constituted copyrightable expression, Plaintiffs here identify only such matters as are excluded from protection under *Baker v. Selden* and section 102(b). Plaintiffs' list of elements does not survive the first step of the *Kohus* substantial similarity test.

      C.    <u>Plaintiffs Cannot Show a Protected "Combination of Unprotectible Elements"</u>
                <u>Here Because the Combination Itself Is Not Protectible</u>

Plaintiffs argue at length that "combination" of their unprotected elements is protectible. However, Plaintiffs ignore that combinations themselves are not automatically protected by copyright. To the contrary, "a combination of unprotectible elements is eligible for copyright protection only if those elements are numerous enough <u>and their selection and arrangement original enough</u> that their <u>combination</u> constitutes an original work of authorship." *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003) (emphasis added.)

Here, the "combination" of the elements listed by Plaintiffs amounts to nothing more than the <u>complete</u> set of UNO game "rules," which are as unprotected as a group as they are individually. For this reason, Plaintiffs' discussion of *Arica Inst., Inc. v. Palmer*, 970 F.2d 1067 (2d Cir. 1992) is irrelevant. Moreover, Plaintiffs' expert admitted that the overall organization of the text of the 1971 Instructions is not even original, but merely follows a "stock format" common to game instructions at the time and previously.[23]

As to the particulars of this "stock format," Mr. Kansil described them in detail, and they fit the 1971 Instructions to a tee. Specifically, Plaintiffs' expert explained that virtually all game instructions, including instructions in existence prior to 1971, lay out game rules in the following sequence: First, there is an introductory paragraph, usually called a preamble, that describes the game in brief or describes the object of the game. Second, the instructions list the game equipment (such as the cards), and usually describe the number of players. Then there is a

---

[23] Kansil Trans., at 161:1-11.

section that Plaintiffs' expert called "preliminaries," which instruct the players how to set up the game. After these preliminary matters come the game rules themselves, that describe the way the game is played. After the rules comes the scoring, and then optional sections for variances on the game or describing the strategy of the game.[24] Kansil testified that this format is not only "stock" for game instructions,[25] but indeed that it is dictated by functional considerations:

> It would make the most sense sequentially. You open up a game, you want to know a little bit about what it's about, so that would be the preamble. You want to know how to set up the pieces, that would be the preliminaries. As a formality, they will mention the number of players and equipment. And then you want to know how to play the game and you deal with scoring. That would be the next thing because the scoring is done after the game is played or after a particular hand is played. And then variance and strategy and whatnot is extra material that you may or may not find included at the end. So, sequentially, that would be the most sensible way to teach a game.
>
> Q.    And you'll agree with me that if written instructions deviated too substantially from this stock format that you've described, that you run the risk of confusing the readers?
>
> A.    Yes. If it's not done sequentially, you certainly could.
>
> Q.    And that's your -- that your view as an expert, isn't it?
>
> A.    Yes.[26]

Thus, as Plaintiffs' own expert testified, and Plaintiffs do not dispute with any evidence, there is no protected "combination." This stock format is the very essence of *scenes a faire*, or expression that "flows naturally from the work's theme rather than from the author's creativity." *Kohus*, 328 F.3d at 856; *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 979 (2d Cir. 1980) (*scenes a faire* includes "stock" devices). Moreover, as Mr. Kansil testified, the "arrangement" of the rules serves the unprotected <u>function</u> of "explaining" the rules of the UNO game "sequentially," and thus is not protectible by copyright for this independent reason. *See*

---

[24] Kansil Trans., 98:6-23.

[25] Kansil Trans., 98:24-99:12.

[26] Kansil Trans., 99:18-100:17.

*Sem-Torq*, 936 F.2d at 854-55.  The arrangement or combination of elements in the 1971

Instructions is no more protectible than the individual rules of play.

> D.    Plaintiffs Have Submitted No Evidence that *Any* Expression of Mattel's UNO
> Game Instructions Is "Substantially Similar" to Any Expression of the 1971 UNO
> Game Instructions

The only evidence Plaintiffs submit on this Motion is irrelevant to the issue before the

Court, such as press releases about the popularity of the "game."  And, although Plaintiffs claim

that Mr. Kansil found the 1971 Instructions "substantially similar" to Mattel's 1999 instructions

(Opposition, at 4), Mr. Kansil repeatedly made clear in his deposition that he was referring <u>solely</u>

to the system of game play, and not to any expression.  When asked to explain each of the aspects

of the game he believed were similar, Plaintiffs' expert could identify only the following matters

-- all of which are <u>not</u> encompassed by the '531 copyright:

- "The play system"[27]

- "The format of the rules," in that they explain the system of play "sequentially"[28]

- The "card breakdown" listed on both sets of instructions, and "the scoring and
counting" of the game.[29]

Plaintiffs' expert made very clear that when he was opining that the 1971 Instructions were

"substantially similar" to the 1999 instructions, he meant "in the play system and whatnot, not in

the exact wording of the rules."[30]  Plaintiffs, as the opponents on this Motion for summary

judgment, have the burden of presenting evidence that would allow a reasonable jury to find in

---

[27] Kansil Trans., at 159:12-19.

[28] Kansil Trans., at 159:23-160:25; 161:1-11.

[29] Kansil Trans., at 161:18-162:6.  The matters in this section of the instructions that
Mr. Kansil found to be similar were the names and functions of the cards (e.g., "Skip,"
"Reverse," etc.) and the fact that the cards are numbered "0 through 9." *Id.* 162:17-163:5.

[30] Kansil Trans., at 168:12-21.  As to the expression of the instructions, he repeatedly
stated that it was "different," had "been reworded," "the wording is different," and "the words in
virtually each paragraph have been recast."  Kansil Trans., at 154:23, 160:3-4, 164:13-14.

their favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986). Having submitted none, Plaintiffs cannot survive the first step of the substantial similarity test and summary judgment must be granted under *Kohus*.

E.    Plaintiffs Misapply the Originality Requirement to Unprotectible Elements of the UNO Game

Plaintiffs include a section in their Opposition arguing that "the UNO card game" is an original creation of Merlin and Raymond Robbins. (Opposition, at 15.) This section is irrelevant to *Kohus* or this Motion. Of course, whether the game -- as distinct from the instructions describing its play system -- is original says nothing about its copyright protectibility of particular expression under section 102(b). Plaintiffs again are merely submitting evidence and argument to the Court about the UNO game that has no relevance the issue on this Motion.

Plaintiffs also mention the '531 Copyright and the renewals of it as "evidence" of the originality of the 1971 Instructions as a whole. (Opposition, at 15-16.) Again, Plaintiffs are arguing an issue irrelevant to this Motion. Whether or not the Robbinses contributed the minimal originality required to obtain a copyright registration in the 1971 Instructions goes to the preliminary issue of authorship -- an issue of the validity of the '531 Copyright as a whole that has nothing to do with the two-step substantial similarity inquiry.[31] The discussion of originality in Mattel's Motion refers to *Kohus*' requirement that the substantial similarity test only prohibit "copying of constituent elements of the work that are original." 328 F.3d at 853 (emphasis added). "Simply because a work is copyrighted does not mean every element of that work is protected. . . . [A]n element within a work may be unprotectible even if other elements, or the work as a whole, warrant protection." *Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 210 F.Supp.2d 147, 160 (E.D.N.Y. 2002). Thus, whether there is "protectible expression"

---

[31] "Originality" in the sense Plaintiffs are arguing is simply the threshold requirement for copyright protection of a work as a whole. *Portionpac Chem. Corp. v. Sanitech Sys., Inc.*, 217 F.Supp.2d 1238, 1244-45 (M.D. Fla. 2002) ("The Copyright Act requires that a work must be an original work of authorship to receive copyright protection.") (citing 17 U.S.C. § 102(a)).

somewhere in the 1971 Instructions (as Plaintiffs argue at page 16 of their Opposition) is irrelevant here. What is relevant is whether any of the elements of those instructions that Mattel has supposedly used are protected by copyright. They have not satisfied their burden in this print, and accordingly this case is appropriate for the entry of summary judgment.

III.    THE UNO GAME INSTRUCTIONS ARE SUBJECT TO THE LIMITATIONS OF THE
        MERGER DOCTRINE AND *SCENES A FAIRE*

    Again departing from the issue on this Motion, which involves filtering out unprotectible material, Plaintiffs go to great lengths to argue that the merger doctrine and the doctrine of *scenes a faire* do not invalidate the '531 Copyright. (Opposition, at 16-23.) As previously explained, however, Mattel is not basing this Motion on the separate, threshold question of whether Plaintiffs have a valid copyright in the 1971 Instructions. Instead, Mattel has raised these doctrines in the specific context of, as *Kohus* mandates, examining the elements cited for copyright protectibility and filtration.

    *Kohus* expressly states that "those elements dictated by efficiency" and "elements that follow naturally from [a] work's theme" are unprotectible and subject to filtering. 328 F.3d at 856. Indeed, the "elements" Plaintiffs cite as copied in this case are, in fact, functional aspects of the system of playing the UNO game that must be filtered out under these doctrines. (*E.g.*, Opposition, at 14, asserting that both the 1971 Instructions and Mattel's instructions "instruct the user to use 2 'Skip' cards in each of the four colors . . . and instruct them to be used for the same purpose." (Emphasis added).) Plaintiffs' arguments regarding merger and *scenes a faire* is a straw man meant to distract this Court from the real issue: whether after filtering out the unprotected elements the Plaintiffs can show that Mattel has used any copyrighted material in its post 1999 instructions. Plaintiffs rely on a straw man because they cannot meet their burden on this point.

    Merger and *scenes a faire* certainly have a role in other aspects of this case, such as the comparison made at the second step of the substantial similarity analysis, but those aspects are

not at issue here.  Thus, while some cases suggest that copyright protection should not be available for contest instructions at all because the "subject matter would be appropriated by permitting the copyrighting of its expression,"[32] and others impose a heightened standard of "verbatim" or "slavish" copying on the comparison,[33] Mattel has <u>not</u> argued on this Motion, and does not need to argue, that "all game instructions are not copyrightable because they are functional."[34]  The sole issue to which this Motion is directed is identifying allegedly similar elements that are protected by copyright, which Plaintiffs have completely failed to do.

Plaintiffs accordingly attempt to distinguish the merger cases on various grounds that are inapplicable to this Motion, and indeed are not supported by copyright law or with any facts.  For example, they attempt to distinguish *Affiliated Hosp. Prods.*, *Decorative Aides Corp., Inc. v. Staple Sewing Aides Corp.*, 497 F. Supp. 154 (S.D.N.Y. 1980), and *Whist Club v. Foster*, 42 F.2d 782 (S.D.N.Y. 1929), on the grounds that the game systems at issue there were "in the public domain" or "conventional" card games.  (Opposition, at 18-19.)  Plaintiffs here are suggesting that, contrary to *Baker v. Selden*, copyright can somehow protect "new" or "novel" systems that are described in a written work.  They are plainly wrong.  As shown above, *all* "systems" are by *definition* unprotected by copyright under 17 U.S.C. § 102(b).

Plaintiffs also argue that the merger doctrine is inapposite in this case by relying on unsupported statements that the "rules" of the UNO game -- the underlying "system" that both the 1971 and 1999 Instructions describe -- may be expressed in "many ways" or "are not

---

[32]  *Morrissey v. Procter & Gamble Co.*, 379 F.2d 675, 679 (1st Cir. 1967).

[33]  *Affiliated Health Prods., Inc. v. Merdel Game Mfg. Co.*, 513 F.2d 1183, 1189 (2d Cir. 1975); *see also Landsberg v. Scrabble Crossword Game Players, Inc.*, 736 F.2d 485, 488 (9th Cir. 1984) (noting that "the degree of substantial similarity required to show infringement varies according to the type of work and the ideas expressed in it.").

[34]  Kansil Trans., at 205:7-22 (discussing page 7 of Kansil's expert report).  For this reason, Plaintiffs' discussion of *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.* is also irrelevant.

straightforward and simple." (Opposition, at 17 (attempting to distinguish *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600 (1st Cir. 1988); 18 (attempting to distinguish *Morrissey v. Procter & Gamble Co.*; 19-20 (attempting to distinguish *Allen v. Academic Games League of Am., Inc.*, 89 F.3d 614 (9th Cir. 1996).) Here, Plaintiffs have not even shown any expression in the elements they are relying on, much less any range of allegedly alternative expressions.

Finally, Plaintiffs attempt to argue that the merger rule does not apply because Mattel allegedly engaged in "very close paraphrasing" of the 1971 UNO game instructions, particularly "the selection, coordination and arrangement" of the instructions such as "the physical structure of the game, including the special function cards, the non-standard deck of cards, and the strategy for scoring." (Opposition, at 20 (attempting to distinguish *Landsberg*.) First, the standard of proof of "similarity" (i.e., the second step of the *Kohus* inquiry) is not the issue on this motion. Second, Plaintiffs' own language establishes that the only thing they can accuse Mattel of "paraphrasing" is unprotectible aspects of the game's rules of play.

**Conclusion**

Plaintiffs have not raised a triable issue of fact as to the protectibility of *any* purportedly similar elements between the 1971 Instructions and Mattel's UNO instructions. Because the only elements identified by Plaintiffs are unprotected by copyright as a matter of law, the Court should grant summary judgment on Plaintiffs' profits accounting claim.


DATED: September 9, 2003

Respectfully submitted,

*Sue P. Erhart*

Michael T. Zeller
Marc Greenwald
Steven Vaughan
QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 624-7707
Facsimile: (213) 624-0643

Patrick F. Fisher
Sue A. Erhart
KEATING, MUETHING & KLEKAMP, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202
Telephone: (513) 579-6400
Facsimile: (513) 579-6457
Attorneys for Defendant
Mattel, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of REPLY OF DEFENDANT MATTEL, INC. IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' CLAIM FOR ACCOUNTING OF PROFITS has been served upon Bruce Tittel, Esq., Wood, Herron & Evans, 2700 Carew Tower, 441 Vine Street, Cincinnati, Ohio 45202, by regular U.S. mail on this the 9th day of September, 2003.

Sue C. Erhart

Sue A. Erhart

1147162.1